UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIPS BAY ENDOSCOPY CENTER, PLLC, KIPS
BAY ASSOCIATES, LLC, KIPS BAY
ANESTHESIA, PC, and CONCORDE MEDICAL
GROUP, PLLC,

                              Plaintiffs,

                       – against –

THE TRAVELERS INDEMNITY COMPANY,
THE PHOENIX INSURANCE COMPANY, THE
CHARTER OAK FIRE INSURANCE COMPANY,
and THE CONSOLIDATED EDISON COMPANY
OF NEW YORK, INC.,

                              Defendants.

**OPINION AND ORDER**

14 Civ. 7153 (ER)

Ramos, D.J.:

      Plaintiffs Kips Bay Endoscopy Center, PLLC ("Kips Bay Endoscopy"), Kips Bay Associates, LLC ("Kips Bay Associates"), Kips Bay Anesthesia, PC ("Kips Bay Anesthesia," collectively, the "Kips Bay Plaintiffs"), and Concorde Medical Group, PLLC ("Concorde," and collectively, "Plaintiffs") brought an action against The Travelers Indemnity Company ("Travelers"), The Phoenix Insurance Company ("Phoenix"), The Charter Oak Fire Insurance Company ("Charter Oak," and collectively, the "Insurers"), and Consolidated Edison Company of New York, Inc. ("ConEd"). Pending before this Court are Plaintiffs' motion to remand this action to the Supreme Court of the State of New York and the Insurers' motion to sever the claims asserted against ConEd so that claims against the Insurers may remain in federal court.

For the reasons discussed below, Plaintiffs' motion for remand is GRANTED and the Insurers' motion to sever is DENIED.

## I. Factual Background

Plaintiffs are associated physicians who administer medical services to patients at their offices located in New York City. Compl. ¶¶ 1, 7. Defendant Travelers is an insurance company with its principal place of business in Hartford, Connecticut. *Id*. ¶ 2. Travelers wholly owns Defendants Phoenix and Charter. *Id*. ¶ 3. ConEd is a public utilities company with its principal place of business in New York City. *Id*. ¶¶ 4, 9.

On April 10, 2012, Travelers and Phoenix issued an insurance policy to the Kips Bay Plaintiffs covering the period from June 5, 2012 through June 5, 2013 for a premium of $1,282. *Id*. ¶¶ 10, 12. On January 8, 2013, Travelers and Phoenix issued another insurance policy to Concorde covering the period from March 1, 2012 through February 28, 2013 for a premium of $53,444. *Id*. ¶ 11-13. Under Plaintiffs' insurance policies, Plaintiffs purportedly were insured "against certain risks, including medical equipment, boiler and other machinery breakdown and business income loss and extra expense," and the Insurers were required to pay for Plaintiffs' loss or damage due to the "necessary suspension of 'operations.'" *Id.* ¶¶ 14, 15. According to Plaintiffs, they were also insured against any power failure that resulted in Plaintiffs suffering a "Covered Cause of Loss." *Id.* ¶¶ 16, 17. A "Covered Cause of Loss" consists of lost business due to the breakdown of "covered equipment," including medical and office equipment. *Id.* ¶ 19. Plaintiffs purportedly paid an additional premium to specifically include "utility failure" as a "Covered Cause of Loss" in their insurance policies. *Id.* ¶ 20. Plaintiffs' insurance policies allegedly state that "service interruption includes coverage for loss caused by or resulting from a breakdown to equipment that is owned, operated, or controlled by a public or private utility or

distributor that directly generates, transmits, distributes, or provides the utility services or power supply services." *Id*. ¶ 20.

On October 29, 2012, Hurricane Sandy hit New York City causing extensive property damage and loss of electricity. *Id.* ¶ 29. ConEd normally provides "steam, electrical and other power" to Plaintiffs through its substation located at 14th Street and Avenue C (the "Avenue C Substation") but Plaintiffs' service was interrupted during Hurricane Sandy. *Id*. ¶¶ 9, 27, 32. Plaintiffs contend that "Con Ed's gross negligence in constructing, maintaining, and securing the . . . Avenue C Substation . . . led to the explosion and destruction of the Avenue C Substation and Plaintiffs' loss of electricity." *Id*. ¶¶ 27, 32. ConEd allegedly decided not to shut down the Avenue C Substation, notwithstanding its awareness of the impending storm, and despite "voluntarily shut[ting] down some of its [other] substations." *Id*. ¶¶ 30, 40, 41. ConEd does not contest that a storm, "albeit not one of the unprecedented intensity of Superstorm Sandy," was forecasted the week prior to Hurricane Sandy hitting New York City and that ConEd preemptively interrupted service to some customers but did not preventively shutdown the Avenue C Substation. *See* ConEd's Answer at ¶ 30.

Plaintiffs claim that their offices lost electricity for five days during and after Hurricane Sandy. Compl. ¶ 32. As a result, during that time Plaintiffs purportedly lost 100% of their business revenue and incurred expenses trying to mitigate losses, amounting to approximately $710,000.00. *Id.* ¶¶ 32, 37, 38. Plaintiffs claim that their "business income and extra expense loss . . . were caused by a Covered Cause of Loss," namely, that Plaintiffs' "medical and office equipment . . . were unable to function" or be used by Plaintiffs to treat patients as a result of the power failure. *Id.* ¶¶ 18,19. Plaintiffs also claim that ConEd's recklessness and/or negligence, "[t]he explosion of Con Ed equipment from any cause or source independent of a power failure

3

or fluctuation,"[1] and "[a] major storm or hurricane" are "Covered Cause[s] of Loss," not exclusions, and that Insurers are required to pay for Plaintiffs' resulting loss or damage.  Compl. ¶¶ 22, 23, 25.  Despite the insurance policies, Travelers denied coverage for losses sustained by Plaintiffs due to the power failure.  *Id.* ¶ 17.  The Insurers assert various affirmative defenses based on the alleged exclusions in Plaintiffs' insurance policies, including exclusions for loss or damage caused, directly or indirectly, by "water," "fire or combustion explosion," "hail or windstorm," and "lack of excess power, light, heat, steam or refrigeration except as provided by business income coverage, extra expense coverage, utility interruption coverage and/or spoilage damage coverage."  Insurers' Answer, Doc. 1 at 8-10.

## II.  Procedural History

On February 26, 2014, Plaintiffs brought this action in the Supreme Court of the State of New York asserting four causes of action:  (1) breach of the implied covenant of good faith and fair dealing against all Defendants, (2) gross negligence against ConEd, (3) breach of fiduciary duty against ConEd, and (4) breach of contract against the Insurers.  *See Id.* ¶ 43-58.  The Insurers filed their answer to the Complaint on May 28, 2014.  Doc.1, Ex. 2.  ConEd filed its answer on July 14, 2014.  *Id.* Ex. 3.  On September 5, 2014, the Insurers removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  *Id.*  On October 8, 2014, Plaintiffs filed a motion to remand the action back to state court pursuant to 28 U.S.C. § 1447(c).  Doc. 4.  On December 5, 2014, the Insurers filed a motion to sever the claims against it from those of ConEd so that the Insurers may proceed in federal court.  Doc. 18.

---

[1] Plaintiffs' insurance policies allegedly exclude loss or damage caused directly or indirectly as a result "power failure or fluctuations."  Compl. ¶ 21; Insurers' Answer at 11.  Plaintiffs contend that "'power failure or fluctuation' refers to outages historically due to overextensions of the power grid or other breakdowns in the course of the normal, competent operation by Con Ed of the power grid" and that the cause of the equipment failure and the resulting loss of business income at issue in the instant action "was not a power failure or fluctuation.'"  Compl. ¶ 21.

4

**III.     Legal Standard**

The federal removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a) (2011).  According to the Second Circuit, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (internal citation omitted).  "'Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.'" *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)).  The party seeking removal bears the burden of proving that the jurisdictional and procedural requirements of removal have been met. *Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 436 (S.D.N.Y. 2006) (citing *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c) (2011).

**IV.     Discussion**

In support of its motion to remand, Plaintiffs assert that the Insurers improperly removed this action to federal court because (1) complete diversity is lacking in the instant action, and (2) the Insurers' removal was defective because Defendant ConEd did not consent to removal within the requisite thirty day period.  Pls.' Mem. in Supp. of its Mot. to Remand ("Pls.' Mem."), Doc.

7 at 2-4.  The Insurers argue that severing ConEd and the claims against it is appropriate under Rule 21 of the Federal Rules of Civil Procedure, or, alternatively, under the doctrine of fraudulent misjoinder.  Defs.' Mem. in Support of Defs.' Mot. to Sever ("Defs.' Mem."), Doc. 19 at 1; Defs.' Opp'n to Pls.' Mot. to Remand ("Defs.' Opp'n"), Doc. 10 at 1.  "[W]here removal is based on diversity jurisdiction; there must be complete diversity of citizenship between the plaintiff(s) and defendant(s)."  *Sons of the Revolution in New York Inc. v. Travelers Indemnity Company of America*, No. 14 Civ. 03303 (LGS), 2014 WL 7004033, at *2 (S.D.N.Y. Dec. 11, 2014).  There is no dispute that complete diversity does not exist as the parties are currently constituted; Plaintiffs and ConEd are citizens of New York. [2]  Doc.1 ¶¶ 1, 4.  With the removal of ConEd, the Insurers assert that this Court has diversity jurisdiction over this action pursuant to § 1332(a).

The instant action is substantially similar to *Sons of the Revolution in New York Inc. v. Travelers Indemnity Company of America*, No. 14 Civ. 03303 (LGS), 2014 WL 7004033 (S.D.N.Y. Dec. 11, 2014) ("*Sons of the Revolution*").[3]  In *Sons of the Revolution*, as in the instant case, the plaintiff brought an action against Travelers and ConEd due to damage resulting from its loss of electricity during Hurricane Sandy.  *Id.* at *1-2.  After Travelers removed the action and moved to sever ConEd, plaintiff moved to remand.  *Id.*  Judge Schofield denied Traveler's

---

[2] Plaintiffs Kips Bay Endoscopy, Kips Bay Associates, and Concorde are professional limited liability companies whose members are individuals domiciled in New York and New Jersey.  Doc. 1 ¶ 5.  Kips Bay Anesthesia is a professional corporation organized under the laws of New York with its principle place of business in New York. *Id.*

The Insurers are each organized and existing under the laws of the State of Connecticut.  Doc. 1 ¶ 6.  Plaintiffs put forth that Travelers has its headquarters in New York, New York, thereby extinguishing complete diversity between the parties.  Pls.' Opp'n Mem. at 14-15.  Defendants, however, contend that Plaintiffs are confusing The Travelers Indemnity Company with The Travelers Companies, Inc., which has its principal place of business in New York, New York.  Defs.' Reply Mem at 5-6.  The Court does not address this argument because it finds that Defendant ConEd cannot be severed under either Rule 21 or fraudulent misjoinder, and therefore, complete diversity does not exist independent of Travelers' citizenship.

[3] *Sons of the Revolution* was decided on December 11, 2014 after the Parties had filed their opening briefs, but prior to the Insurers filing their reply memorandum.  *Id.*

motion to sever under Rule 21 or fraudulent misjoinder because the plaintiff's claims against Travelers and ConEd arose out of the same occurrence—the plaintiff's loss of utility service during Hurricane Sandy—and, as a result, had a substantial possibility of duplicative discovery. *Id.* at *4. The Court finds Judge Schofield's reasoning persuasive.

### A.  Dismissal of ConEd Pursuant to Rule 21

Rule 21 of the Federal Rules of Civil Procedure states that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21. (2007). Rule 21 "allows a court to drop a nondiverse party at any time to preserve diversity jurisdiction, provided the nondiverse party is not 'indispensable' under Rule 19(b)."[4]  *CP Solutions PTE, Ltd. v. Gen. Electric Co.*, 553 F.3d 156, 159 (2d Cir. 2009) (per curiam). The district courts have broad discretion under Rule 21 to decide whether to sever any party from the action. *See Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 557 (S.D.N.Y. 2013); *Sons of the Revolution*, 2014 WL 7004033, at *3.

In deciding whether to sever a claim under Rule 21, courts generally consider "(1) whether settlement of the claims or judicial economy would be facilitated; (2) whether prejudice would be avoided if severance were granted; and (3) whether different witnesses and documentary proof are required for the separate claims." *Murray v. Std. Fire Ins. Co.*, No. 13 Civ. 5990 (JS) (AKT), 2013 WL 6667340, at *3 (E.D.N.Y. Dec. 17, 2013).[5]  However, "[c]ourts

---

[4] Rule 19 (b) lists four factors in determining whether a party is indispensable: "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (a) protective provisions in the judgment; (b) shaping the relief; (c) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder. FED. R. CIV. P. 19(b) (2007).

[5] In deciding whether defendants have been properly joined or should be severed under Rule 21, courts consider the following additional factors: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claim." *Kalie,* 297 F.R.D. at 556-57.

in this Circuit have declined to apply Rule 21 in removed cases where 'dismissal of the non-diverse defendants pursuant to [Rule] 21 to establish complete diversity of citizenship would result in duplicative, wasteful litigation in federal and state courts that could result in conflicting rulings.'" *Sons of the Revolution*, 2014 WL 7004033, at *3 (citing *Nolan v. Olean Gen. Hosp.*, 13 Civ. 333, 2013 WL 3475475, at *1 (W.D.N.Y. July 10, 2013); *Humphrey v. Riley*, 14 Civ. 80, 2014 WL 3400964, at *4 (N.D.N.Y. July 10, 2014)). The application of Rule 21 in the removal context "would circumvent the strict constraints of the removal statute and unduly expand diversity jurisdiction." *Id.* at *2 (citing *Phillips v. R.R. Dawson Bridge Co., LLC*, No. 14 Civ. 480 (LSC), 2014 WL 3970176, at *5 (N.D. Ala. Aug. 12, 2014); *Hagensicker v. Boston Scientific Corp.*, No. 12 Civ. 5018 (SW) (RED), 2012 WL 836804, at *1 (W.D. Mo. Mar. 12, 2012); *Echols v. OMNI Med. Grp., Inc.*, 751 F. Supp. 2d 1214, 1217 (N.D. Okla. 2010)). As a result, courts are "reluctant to employ Rule 21 in the removal context" because "[w]hile Rule 21 is routinely employed in cases that *began* in federal court, the federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent." *Id.* (emphasis in original). Here, as in *Sons of the Revolution*, this Court finds that "[t]hese concerns are compelling and counsel against the application of Rule 21." *Id.*

The Insurers argue that this Court should not follow Judge Schofield's decision in *Sons of the Revolution* for three reasons. *First*, the Insurers contend that the Second Circuit's decision in *Call Ctr. Technologies, Inc. v. Grand Adventures Tour & Travel Pub. Corp.*, 635 F.3d 48, 50 (2d Cir. 2011) ("*Call Center*") is controlling. Defs.' Mem. at 3; Defs.' Reply Mem. at 7. In that case, the Second Circuit affirmed the district court's severance of a non-diverse defendant under Rule 21 in a case removed from state court to federal court in order to preserve diversity jurisdiction. However the procedural posture in *Call Center* is readily distinguishable. *Call*

*Center* was litigated in federal district court for approximately six years and final judgment was granted as to one defendant before federal jurisdiction was challenged and severance was requested. *See id.* at 50-51.[6] Here, the only substantive activity to have taken place is Plaintiffs' fairly immediate motion to remand and the Insurers' motion to sever. Additionally, the Second Circuit itself limited *Call Center*'s authority in *Rost v. Pfizer Inc.*, 502 Fed. App'x 51, 52 (2d Cir. 2012). In *Rost*, the Second Circuit explained that although it affirmed severance of the non-diverse defendant in *Call Center*, that court never "suggest[ed] that it would have been an abuse of discretion for the district court to deny the defendant's request [to sever under Rule 21.]" *Rost*, 503 Fed. App'x at 52. The *Rost* court also distinguished *Call Center* as a situation where "dismissing the non-diverse party preserved final judgment in favor of the remaining defendants and prevented repetitive litigation." *Id.* Here, like in *Rost*, severing the non-diverse Defendant would lead to two parallel litigations: one in federal court against the Insurers and one in state court against ConEd. *See id.* (upholding the district court's denial of the defendant's motion to sever the non-diverse defendant under Rule 21 where dismissal would have reopened the case).

The Insurers also argue that there is no factual overlap between the claims in the instant action or in *Sons of the Revolution*. Specifically, the Insurers' *second* argument asserts that "to the extent that *Sons of the Revolution* suggested that 'the possibility of duplicative discovery is substantial' . . . that is not the case here" because "[t]he only factual issue on which ConEd has information relevant to the insurance coverage is the issue of whether the damage to ConEd's equipment was caused by wind (a covered cause of loss) or flood (an excluded cause of loss) . . .

---

[6] The plaintiff in *Call Center* filed suit in state court in August 2002. *Id.* at 50. In June 2003, the action was removed to federal court on the basis of diversity jurisdiction. *Id.* In February 2009, default judgment was entered against one of the defendants and the other defendant's motion for summary was granted. *Id.* at 51. Only after the district court's 2009 decision, did the plaintiff move to remand the action back to state court for lack of complete diversity. *Id.* As a result, the court vacated the default judgment against the non-diverse defendant, severed that defendant from the instant action under Rule 21, and affirmed its 2009 opinion granting summary judgment to the diverse defendant. *Id.*

9

[w]hich has nothing to do with" Plaintiffs' negligence based claims against ConEd.  Defs.' Reply Mem. at 7.  Relatedly, the Insurers' *third* argument contends that the court in *Sons of the Revolution* "incorrectly found factual overlap" for the same reasons—that the insurance coverage depends only on whether the damage was caused by a covered cause of loss (such as wind) or an excluded cause of loss (flood)." *Id.* at 7-8.  Both arguments fail.

Plaintiffs' causes of action against ConEd and the Insurers arise from the same occurrence, Hurricane Sandy and Plaintiffs' resulting loss of electricity for five days.  The fact that Plaintiffs assert tort claims against ConEd and a breach of contract claim against the Insurers does not mandate the severance of ConEd under Rule 21.[7]  Evidence regarding how and why the Avenue C Substation was damaged during Hurricane Sandy, resulting in Plaintiffs' loss of electricity for five days, underlies all of Plaintiffs' allegations.  Plaintiffs' breach of contract claim against the Insurers depends on the determination of how the Avenue C Substation was damaged, as will Plaintiffs' tort claims against ConEd.  The risk of duplicative discovery and "wasteful litigation" is substantial where, as here, the facts underlying Plaintiffs' claims overlap.  *See Sons of the Revolution*, 2014 WL 7004033, at *3.

The Insurers' reliance on three decisions from the Eastern District of Louisiana regarding litigation arising out of Hurricane Katrina is misplaced.  Defs.' Mem. at 6,8.  In those cases, the court severed claims brought by the plaintiffs against tortfeasors and insurance companies in the same action.  *See Defourneaux v. Metro. Prop. & Cas. Ins. Co.*, No. 06 Civ. 3809, 2006 WL 2524165, at *2 (E.D.La. Aug. 30, 2006) (severing claims alleging that Joseph Parish negligently failed to maintain the drainage system from breach of contract claims against the insurer because they did not arise from the same transaction or occurrence); *Berthelot v. Boh Bros. Constr. Co.*,

---

[7] Plaintiffs also allege breach of the implied covenant of good faith and fair dealing against all Defendants.  Compl. ¶ 49-50.

*L.L.C.*, No. 05 Civ. 4182, 2006 WL 1984661, at *12 (E.D. La. June 1, 2006) (severing claims based on the doctrine of fraudulent misjoinder, since one was grounded in contract and the other in tort and had "virtually no relation" to each other); *Savoie v. Safeco Ins. Co. of Am.*, No. Civ. 7808, 2007 WL 675304, at *1 (E.D. La. Feb. 27, 2007) (finding contractor and insurer were improperly joined because the plaintiff's claims against the contractor for failing to repair her home were "independent allegations of improper construction and repair that occurred months after Hurricane Katrina"). However, in these cases none of the insurance policies at issue "involved coverage relating specifically to a service provided by the co-defendant." *Sons of the Revolution*, 2014 WL 7004033, at *4. Here, the insurance policies allegedly insured Plaintiffs' against the risk of interruption to services provided directly by co-Defendant ConEd. The Insurers' reliance on *Murray* is similarly misplaced. The court in *Murray* found that "despite the fact that a single natural disaster, Superstorm Sandy, caused the damage to Plaintiffs' properties," the plaintiffs' claims did not arise out of the same transaction or occurrence because the plaintiffs "purchased separate insurance policies" and the court found that the insurer "may have different reasons for denying and/or limiting payment for each Plaintiff's individual claim." *Id.* at *2. The Insurers allege that the claims here are even less related to the situation presented in *Murray* since the claims alleged by Plaintiffs are grounded in two distinct areas of law. Defs.' Mem., Doc. 19 at 6. However, the Insurers reasons for denying coverage are alleged to be the same—that Plaintiffs' losses arise out of a situation excluded under the policy.

Accordingly, the Court denies the Insurers' motion to sever claims against ConEd pursuant to Rule 21.

11

### B.  Fraudulent Misjoinder

In the alternative, the Insurers seek to sever the claims brought against them from those claims brought against ConEd on the basis of fraudulent misjoinder.  Fraudulent misjoinder was first articulated by the Eleventh Circuit, which explained that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action."  *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996); *abrogated by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).   While the Second Circuit has not yet addressed the concept of fraudulent misjoinder, it has been applied by at least one district court in this Circuit.  *See In re Rezulin Products Liability Litigation*, 168 F.Supp.2d 136, 144–48 (S.D.N.Y. 2001) (remanding only the non-diverse plaintiffs based on fraudulent misjoinder).  Other courts in this Circuit have implicitly embraced the concept, observing that fraudulent misjoinder may be found when "a plaintiff purposefully attempts to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard."  *Sons of the Revolution in New York, Inc.*, 2014 WL 7004033, at *3; *see also In re Fosamax Products Liab. Litig.*, MDL. No. 1789 (JFK), 2008 WL 2940560, at *4 (S.D.N.Y. July 29, 2008) ("a defendant claiming fraudulent misjoinder would have to show (1) that there is outright fraud in the pleading of the facts supporting joinder or (2) that there is no possibility, based on the pleadings, that the parties are properly joined under applicable joinder rules."); *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 378-79 (S.D.N.Y. 2006).

In evaluating fraudulent misjoinder claims, "the majority of cases have held that state rather than federal joinder rules apply."  *In re Fosamax Products Liab. Litig.*, 2008 WL 2940560, at *4 (collecting cases); *see also Sons of the Revolution in New York, Inc.*, 2014 WL 7004033, at *3 ("the 'majority of federal courts' evaluate claims of fraudulent misjoinder by applying the

12

relevant state law rule for permissive joinder rather than the federal rule."). In New York, the Civil Practice Law and Rules ("C.P.L.R.") § 1002(b) governs the permissive joinder of parties and states that "[p]ersons against whom there is asserted any right to relief jointly, severally, or in the alternative, arising out of the same transaction, occurrence, or series of transactions or occurrences, may be joined in one action as defendants if any common question of law or fact would arise." N.Y. C.P.L.R. § 1002(b) (1962).[8]

The Insurers assert that Plaintiffs' claims against them are improperly joined with Plaintiffs' negligence claim against ConEd under C.P.L.R. §1002(b). Defs.' Opp'n at 8-9. Specifically, the Insurers claim that whether ConEd was negligent in its response to Hurricane Sandy is irrelevant to Plaintiffs' claims against the Insurers, where "the sole issue . . . is whether the property insurance contract provides coverage for the losses sustained." *Id.* at 9. The Insurers acknowledge there may be minimal overlap in the discovery related to the contract and tort claims, but claim this overlap would be "limited" and would not require "duplication [of] their litigation efforts." *Id.*

In *Sons of the Revolution*, Judge Schofield addressed this exact issue and found that Travelers and ConEd were properly joined under N.Y. C.P.L.R. § 1002(b) because, as is the case here, "Travelers' policy explicitly links its coverage and exclusion to the cause of damage" and a "threshold question for ConEd's liability is the extent to which it caused Plaintiff's damages." Moreover, the court found the factual overlap between "one of Plaintiff's contractual claims [which] relates to the coverage provided specifically for interruption of utilities services" was "sufficient to satisfy the requirement of 'any common question of law or fact' and defeats the

---

[8] Section 1002(b) is "nearly identical" to Rule 20 of the Federal Rules of Civil Procedure. *Sons of the Revolution in New York, Inc.*, 2014 WL 7004033, at *3; *See* FED. R. CIV. P. 20 (2007) (stating that parties may be joined if "(a) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (b) any question of law or fact common to all plaintiffs will arise in the action.").

claim of fraudulent misjoinder." *Id.*; *see also J.O.B Invs., LLC v. Goo tee Servs., LLC*, 908 F. Supp. 2d 771, 777–78 (E.D. La. 2012) (rejecting argument that contractors and insurer were fraudulently misjoined because a "central issue" in the plaintiff's claims against both defendants was the cause of the damage to plaintiff, which would "inform the assessment of whether exclusions in [the] policies bar coverage of the plaintiff's damages and whether the contractors were negligent or breached the terms of their contracts with plaintiff."). Here too, Plaintiffs' insurance policies explicitly link coverage and the cause of damages. Specifically, the insurance policies purportedly insured Plaintiffs against the very risks that occurred—a utility company's failure to provide power services and the resulting loss of business income. Compl. ¶¶ 20, 23-24. Because claims against ConEd and the Insurers arise out of the same occurrence, the parties were properly joined.

Because Rule 21 and fraudulent misjoinder do not warrant severance of the claims against ConEd, ConEd remains a defendant in this action. As a result, there is no complete diversity between the parties and this Court lacks jurisdiction pursuant to 28 U.S.C. § 1332(a).[9]

---

[9] The Court does not address the parties' arguments regarding the Rule of Unanimity because the Court finds ConEd to be a proper party, and therefore, the action must be remanded to state court for lack of jurisdiction. *See* Pls.' Mem. at 7, *Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 66 (2d Cir. 2012) ("District courts within this Circuit . . . have consistently interpreted the [removal statute] as requiring that *all* defendants consent to removal within the statutory thirty-day period, a requirement known as the 'rule of unanimity.'") (emphasis added); *see also Avon Group LLC v. Mosdos Chofetz Chaim Inc.*, No. 12 Civ. 3827 (ER), 2012 WL 2886697, at *5 (S.D.N.Y. July 13, 2012, or the Insurers' contention that Plaintiffs waived any Rule of Unanimity argument by failing to file its motion to remand within thirty days of removal. Defs.' Mem. at 9.

## V. Conclusion

For the foregoing reasons, Plaintiffs' motion to remand the case to New York Supreme Court is GRANTED and the Insurers' motion to sever is DENIED. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 4, 18, and 20, and REMAND the case to the Supreme Court of the State of New York, New York County.

IT IS SO ORDERED.

Dated:  July 24, 2015
        New York, New York

                                                          _____
                                                          Edgardo Ramos, U.S.D.J.